1

2

3

4

5

6

7

8                                  UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     TERA LEE NICHOLSON,                              No.  2:13-cv-2407 JAM DAD P

12                      Petitioner,

13          v.

14     D. K. JOHNSON,                                   FINDINGS AND RECOMMENDATIONS

15                      Respondent.

16

17              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18     pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against her

19     on May 31, 2012, in the Sacramento County Superior Court pursuant to a plea agreement under

20     the terms of which she entered a no contest plea.  As a result of her plea, petitioner was convicted

21     of causing bodily injury to another person while driving under the influence of alcohol, in

22     violation of California Vehicle Code § 23153(b), with sentencing enhancements for causing

23     bodily injury to more than one victim and causing great bodily injury to one victim, pursuant to

24     California Vehicle Code § 23558 and California Penal Code § 12022.7(a).  Petitioner seeks

25     federal habeas relief on the following grounds:  (1) the trial court abused its discretion in denying

26     her motion to withdraw her no contest plea in light of the evidence presented in support of that

27     motion, thereby violating her rights under the 6th and 14th Amendment rights; (2) she received

28     ineffective assistance in connection with the entry of her no contest plea due to her counsel's

1    failure to conduct an investigation, thereby violating her rights under the 6th and 14th

2    Amendment rights; and (3) she is actually innocent of the crimes of which she was convicted.

3    Upon careful consideration of the record and the applicable law, the undersigned will recommend

4    that petitioner's application for habeas corpus relief be denied.

5    **I. Background**

6           In its unpublished memorandum and opinion affirming petitioner's judgment of

7    conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

8    following factual summary:

> Defendant Tera Lee Nicholson pled no contest to unlawfully
> driving under the influence of alcohol and the enhancements of
> causing bodily injury to more than one victim and causing great
> bodily injury to one victim.  Before sentencing, defendant moved to
> withdraw her plea.  The court denied her motion and sentenced her
> to seven years four months in prison.  On appeal, defendant
> contends the court abused its discretion by denying her motion to
> withdraw her plea because her prior counsel was constitutionally
> ineffective.  Disagreeing, we affirm.
>
> **FACTUAL AND PROCEDURAL BACKGROUND**
>
> In January 2012, emergency personnel responded to a car crash at
> Folsom Lake Bowl.  When they arrived, they found a severely
> damaged car inside the patio area.  The police found defendant next
> to the driver's door and noticed a "strong odor of an alcoholic
> beverage."  Defendant told the officers she was driving and
> admitted she had been drinking.
>
> Defendant was charged with driving under the influence of alcohol.
> It was further alleged that she caused bodily injury to more than one
> victim and that she caused great bodily injury to one victim.
> Following two public defenders, John Casey (hereafter prior
> counsel) was substituted in as defense counsel.   With prior
> counsel's assistance, defendant accepted a no contest plea
> agreement and the matter was referred to the Sacramento County
> Probation Department.  Defendant admitted to the probation officer
> she was driving the car the night of the accident.
>
> On the day of her sentencing hearing, defendant – represented by
> new counsel Donald Masuda – moved to withdraw her plea.
> Defendant contended that prior counsel was constitutionally
> ineffective for failing to adequately investigate her case.   She
> argued that further investigation was warranted because: (1)
> "[i]mmediately after the incident, officers were unable to locate any
> witness who saw [defendant] operating the Mustang"; (2) the one
> victim who identified defendant as the driver was purportedly a
> drug user and did not make an identification until a month after the
> incident; (3) defendant owned a Droid X cell phone at the time of

2

the accident, not a Nokia phone, which is what was found in the center console of the vehicle; (4) the driver's seat air bag deployed fine white powder and there was no report of any white powder on defendant or her personal belongings; and (5) she did not sustain injuries consistent with what would be expected in an air bag deployment. Defendant filed her own personal declaration and declarations of others to support these claims.

Defendant's declarations also included the following assertions: she had asked prior counsel to conduct an investigation, he initially assured her he would investigate the possibility that someone else was driving her car that night, and after the plea she found out no investigation had been made. Defendant "told [prior counsel] specifically that the phone found in the [car] was not [hers]" and that, prior to entering her plea, prior counsel told her the results of the investigation "did not point to someone else driving that night," which was why she decided to take the plea agreement. Prior counsel advised her to tell the probation officer she was driving the car to demonstrate remorse.

In opposition, the People submitted declarations of prior counsel. He declared that defendant was upset by the length of her prison term but never gave a substantive reason for why. Before he was retained, he advised defendant it was unlikely that he would be able to secure a better offer. After he was retained, the prosecutor emailed him that if defendant did not take the current plea, the prosecutor would add further enhancement allegations. He met with defendant and explained the best choice for her was to pursue mitigation material. Later that month, he unsuccessfully asked the court and prosecutor for a lower sentence. Defendant was emotional when he was telling her this, and he "reminded her . . . she did not have to accept the offer if she didn't want to." Defendant never told him she doubted she was the driver or that the cell phone was not hers. He never told defendant he would investigate whether someone else was driving the car or that an investigation had actually occurred. He did not instruct defendant to tell the probation officer she was driving.

The court denied defendant's motion to withdraw her plea, finding that "[t]o the extent disputes or conflicting statements exist between the declarations of the defendant and those of [prior counsel], I credit [prior counsel]'s statements."

People v. Nicholson, No. C071918, 2013 WL 3209465, at **1-2 (Cal. App. 3 Dist. June 25, 2013).

After the California Court of Appeal affirmed her judgment of conviction, petitioner filed a petition for review in the California Supreme Court. (Resp't's Lod. Doc. 5.) The California Supreme Court summarily denied that petition by order dated August 28, 2013. (Resp't's Lod. Doc. 6.)

3

1  **II. Analysis**

2      **A. Standards of Review Applicable to Habeas Corpus Claims**

3        An application for a writ of habeas corpus by a person in custody under a judgment of a

4  state court can be granted only for violations of the Constitution or laws of the United States.  28

5  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6  application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502

7  U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

8        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

9  corpus relief:

10
11
12
        An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

13
14
        (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

15
16
        (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

18  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

19  Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859

20  (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent

21  "may be persuasive in determining what law is clearly established and whether a state court

22  applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561,

23  567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general

24  principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

25  not announced."  Marshall v. Rodgers, ___ U.S. ___, 133 S. Ct. 1446, 1450 (2013) (citing Parker

26  v. Matthews, ___ U.S. ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be used to "determine

27  whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if

28  presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further, where courts of appeals

4

1   have diverged in their treatment of an issue, it cannot be said that there is "clearly established

2   Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77 (2006).

3        A state court decision is "contrary to" clearly established federal law if it applies a rule

4   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

5   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

6   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

7   writ if the state court identifies the correct governing legal principle from the Supreme Court's

8   decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1]  Lockyer v.

9   Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

10   (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

11   concludes in its independent judgment that the relevant state-court decision applied clearly

12   established federal law erroneously or incorrectly.  Rather, that application must also be

13   unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

14   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

15   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

16   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

17   'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

18   Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

19   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

20   must show that the state court's ruling on the claim being presented in federal court was so

21   lacking in justification that there was an error well understood and comprehended in existing law

22   beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

23        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

24   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

25   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

26

27   

28

---

[1]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

2   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

3   de novo the constitutional issues raised.").

4        The court looks to the last reasoned state court decision as the basis for the state court

5   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

6   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

7   previous state court decision, this court may consider both decisions to ascertain the reasoning of

8   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

9   federal claim has been presented to a state court and the state court has denied relief, it may be

10  presumed that the state court adjudicated the claim on the merits in the absence of any indication

11  or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

12  may be overcome by a showing "there is reason to think some other explanation for the state

13  court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

14  (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims but

15  does not expressly address a federal claim, a federal habeas court must presume, subject to

16  rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, ___ U.S. ___,

17  133 S. Ct. 1088, 1091 (2013).

18       Where the state court reaches a decision on the merits but provides no reasoning to

19  support its conclusion, a federal habeas court independently reviews the record to determine

20  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

21  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

22  review of the constitutional issue, but rather, the only method by which we can determine whether

23  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

24  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

25  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

26       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

27  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

28  just what the state court did when it issued a summary denial, the federal court must review the

6

1   state court record to determine whether there was any "reasonable basis for the state court to deny

2   relief." <u>Richter</u>, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

3   have supported, the state court's decision; and then it must ask whether it is possible fairminded

4   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

5   decision of [the Supreme] Court."  562 U.S. at 102.  The petitioner bears "the burden to

6   demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  <u>Walker v.</u>

7   <u>Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

8   　　　When it is clear, however, that a state court has not reached the merits of a petitioner's

9   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

10  habeas court must review the claim de novo.  <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v. Giurbino</u>, 462

11  F.3d 1099, 1109 (9th Cir. 2006); <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003).

12  　　　**B.  Petitioner's Claims**

13  　　　　　**1.  Denial of Petitioner's Motion to Withdraw Her No Contest Plea Based
　　　　　upon the Alleged Ineffective Assistance of Counsel**[2]

14

15  　　　Petitioner claims that the trial court violated her rights under the Sixth and Fourteenth

16  Amendments when it denied her motion to set aside her no contest plea based on the ineffective

17  ──────────────────

18  [2]   As noted above, in her first and second grounds for federal habeas relief petitioner claims that
the state trial court abused its discretion in denying her motion to withdraw her plea and erred in

19  rejecting her contention that because her prior counsel conducted no defense investigation she
received ineffective assistance in connection with her decision to enter her no contest plea.

20  However, federal habeas relief is not available for alleged error in the application of state law,
and habeas corpus cannot be utilized in federal court to try state issues de novo.  <u>Milton v.</u>

21  <u>Wainwright</u>, 407 U.S. 371, 377 (1972); <u>see also</u> <u>Wilson</u>, 562 U.S. at 16; <u>Waddington v. Sarausad</u>,
555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal

22  habeas court to reexamine state-court determinations on state-law questions.'"); <u>Wood v. Ryan</u>,
693 F.3d 1104, 1115 (9th Cir. 2012).  Accordingly, questions of whether the trial court abused its

23  discretion under state law in denying petitioner motion to withdraw her plea are not properly
presented in this federal habeas proceeding.  Moreover, a habeas petitioner may not "transform a

24  state-law issue into a federal one" merely by asserting a violation of the federal constitution.

25  <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1997).  Rather, petitioner must show that the
decision of the state courts somehow "violated the Constitution, laws, or treaties of the United

26  States."  <u>Little v. Crawford</u>, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting <u>Estelle</u>, 502 U.S. at

27  68).  In this case, petitioner's cognizable claim is whether her constitutional right to effective
assistance of counsel was violated by the state court's denial of her motion to withdraw her plea.

28  Her claims one and two will be so construed.

assistance provided by her counsel.  (ECF No. 1 at 4.)[3]  In support of this claim petitioner argues

that she had a "credible defense to the charges brought against her," and that "forensic evidence"

should have prompted her trial counsel to conduct further investigation to determine whether

someone else was driving the vehicle at the time of the accident.  (Id. at 4, 17.)  Petitioner also

argues that in denying her motion to withdraw her plea the trial judge gave "undue credence" to

the declaration filed by her retained trial counsel in which he refuted her contentions.  (Id. at 17,

31-32.)

        In the petition before this court, petitioner essentially repeats the arguments she made in

the state courts.  Petitioner again contends that evidence taken from a "review of the law

enforcement investigative reports" reflects that:  (1) immediately after the accident law

enforcement officers were unable to locate any witness who saw her driving the vehicle that

crashed into the patio area of the Folsom Lake Bowl; (2) the victim who identified petitioner as

the driver gave her statement doing so a month after the accident, was a drug user, and had

overstated the extent of the injuries she suffered on the night in question; (3) officers located a

cell phone in the center console of petitioner's vehicle which they mistakenly identified as

belonging to petitioner when it in fact belonged to someone else; and (4) although the air bag had

deployed, leaving a white powder on the driver's seat, there was no white powder found on

petitioner or her clothing.  (Id. at 27.)   The record underlying these arguments is somewhat

lengthy and will be addressed in more detail below.

        In petitioner's July 7, 2012 declaration filed in support of her motion to withdraw her no

contest plea in the state trial court, she had declared that:  (1) she never admitted driving the

vehicle when it crashed; (2) the cell phone found in the center console of her vehicle was not

hers; (3) she suffered no injuries in the crash consistent with an air bag deployment; (4) she asked

her prior counsel to investigate the circumstances of the crash because she was "uncertain" as to

whether she was the driver; (5) she told her prior counsel that the cell phone found in the center

console of the vehicle did not belong to her; and (6) although her prior counsel told her "a

---

[3]  Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  thorough investigation would be done on her case," she later discovered that no defense

2  investigation whatsoever had been conducted.  (Id. at 27-30; see also Clerk's Transcript on

3  Appeal (CT) at 37-39.)  In that declaration petitioner also stated that

4
> recently, an associate, Scott Muchow, texted me about [a] statement
> made on the morning of January 10, 2012, by the boyfriend of Ms.
5
> Brandi Bridges.  I[n] response to a query, the boyfriend related to
> Mr. Muchow that that [sic] I was not driving that night.
6

7  (Id. at 79.)  Scott Muchow, referred to in petitioner's first declaration, also filed a declaration in

8  support of petitioner's motion to withdraw her no contest plea, in which he declared that minutes

9  after the accident he asked a bystander if petitioner was driving and the bystander responded "no,

10  a man was driving and hit his girlfriend."  (Id. at 94.)  In addition, one of the victims of the

11  accident also filed a declaration in which he stated that another person told him that he saw a man

12  he knew climbing out of the vehicle through the driver's door immediately after the crash

13  occurred.  (Id. at 89.)  In yet another declaration submitted by petitioner below, a different

14  bystander declared that after the crash he looked up and saw a female in the passenger seat and a

15  male on the driver's side of the vehicle involved in the crash.  (Id. at 91-92.)

16      In the state trial court proceedings the prosecution's opposition to petitioner's motion

17  relied in part on the declaration of petitioner's prior retained counsel.  In that declaration counsel

18  stated that:  (1) petitioner specifically admitted to him that she was the driver of the vehicle at the

19  time of the crash and at no time during his representation of her did she ever deny that she had

20  been driving; (2) petitioner never brought prospective witness Scott Muchow or any information

21  Muchow had about the accident to counsel's attention; (3) petitioner never denied she owned the

22  cell phone found by police in the vehicle even though she had the police reports for months; (4)

23  although there was discussion between he and his client "about investigation in a very general

24  sense," petitioner did not make any "specific substantive investigation requests" and counsel

25  informed her that he "saw no investigation that would refute" the evidence against her so as to

26  improve the plea offer; and (5) although petitioner did not like the plea offer, her decision to settle

27  the case was based solely on her desire to avoid a more lengthy prison sentence if she declined

28  the offer and not on any lack of pretrial defense investigation.  (CT at 57-64.)

1  Petitioner replied to her prior counsel's representations.  In a second declaration filed in

2  the trial court in support of her motion to withdraw her plea, petitioner stated that:  (1) her trial

3  counsel assured her he would conduct an investigation to determine whether someone else was

4  driving when the accident occurred; (2) about a week before she entered her change of plea, her

5  counsel sent her a text message stating that "the investigation was being done and would be

6  complete in a week;" (3) before she changed her plea, trial counsel told her that "he had had the

7  investigation done but the results did not point to someone else driving that night;" and she

8  subsequently entered her plea based on that information provided by her counsel; (4) she later

9  found out from her former counsel's staff that no defense investigation had been conducted in her

10  case; and (5) after she entered her change of plea she "did as [her former counsel] said and I told

11  the probation officer that I was driving that night."  (CT at 86-87.)  In support of these assertions,

12  petitioner filed as an exhibit to her second declaration a screen shot of the actual text message she

13  received from her prior counsel, in which he wrote to petitioner as follows:

14  
15  
16  
17  
18  
> I don't intend to speak with keith [another attorney with whom petitioner was consulting], I have given you my assesments [sic]. Your case is very straight forward.  Speaking to keith is a waste of time, no disrepsect [sic] to him.  The 'investigation' will be complete by the due date I assigned to my investigator which isn't until next week and you should have ZERO expectation it will make any difference just like I explained to you in my office.  The only reason I am doing it is for your piece [sic] of mind not because I believ [sic].

19  (Id. at 89.)   In addition, attached to her second declaration was a copy of a subsequent email from

20  her prior lawyer's assistant advising petitioner, in response to her inquiry, that "[t]here is no

21  investigation regarding your case."  (CT at 88.)

22  Petitioner's prior counsel responded to these additional assertions with a second

23  declaration which was submitted by the prosecution in opposition to the motion to withdraw plea.

24  In that second declaration petitioner's prior counsel again declared that she "never indicated to

25  me that there was ever any ambiguity in her mind as to whether or not she was in fact driving."

26  (Id. at 105.)  Rather, "[petitioner] asserted the opposite to me on more than one occasion."  (Id.)

27  Petitioner's prior counsel also declared that:  (1) he did not tell petitioner had would "do any

28  investigation relative to whether or not someone else was driving her vehicle on the night in

10

question;" (2) based on the evidence and petitioner's statements to him, he did not "believe that it was necessary to investigate [the identity of the driver];" (3) he only told petitioner he would "review all of the police reports and records contained within the discovery to ascertain whether or not any investigation would be feasible;" (4) petitioner never suggested to him that the cell phone found in the vehicle did not belong to her; (5) the text message from him described in petitioner's July 24, 2012 declaration and attached thereto was "presented grossly out of context," because in that message counsel was referring only to his promise to review petitioner's case file, including the police reports, to ascertain "IF there was anything worth looking into;" (6) he did not have a "pre-ordained investigative strategy that her and I [sic] had agreed upon;" (7) he did not tell petitioner that "the investigation did not point to someone else driving that night" or that an investigation had been conducted to determine the identity of the driver; and (8) he did not tell petitioner to admit to the probation officer that she had been driving the vehicle and, in fact, it is his "practice that my clients never disclose the facts and circumstances of their cases to the probation officer during a pre-sentence probation interview."  (Id. at 105-112.)

Petitioner argues that the text message from her prior attorney supports her assertion that she requested that he conduct an investigation as to identity the driver of the vehicle involved in the crash.  She contends, however, that "the seminal question was not whether or not [petitioner] asked [trial counsel] to conduct an investigation, it was why such request had to be made at all."  (ECF No. 1 at 31.)  Petitioner notes that her motion to withdraw her plea was also supported by several declarations suggesting that the driver of the vehicle may have been a male, with a female in the passenger seat at the time of the crash.  (Id. at 27-28.)  She concedes that under California law a motion to withdraw a guilty plea will generally be denied where the plea was made on the advice of counsel.  (Id. at 20.)  See People v. O'Neal, 204 Cal.App.2d 707, 709 (1962) ("A plea of guilty entered on advice of counsel, in the absence of fraud, etc., will not be vacated.").  However, petitioner argues that she should have been allowed to withdraw her plea because her prior counsel advised her to accept the plea offer "without fully investigating the law or facts of the case."  (Id.)  Petitioner argues that because her prior lawyer failed to conduct an adequate

/////

11

1    defense investigation, "a meritorious defense was omitted, and the result was 'fundamentally

2    unfair' depriving [petitioner] of her due process rights." (Id. at 33.)

3                              **a.  State Court Decision**

4            Petitioner raised this same issue on direct appeal and in her petition for review filed in the

5    California Supreme Court.  The California Court of Appeal rejected petitioner's arguments,

6    reasoning as follows:

7                    Defendant contends the trial court abused its discretion in refusing
                     to let her withdraw her plea because her prior counsel was
8                    ineffective.  She attempts to prove her contention by reasserting the
                     contents of her declarations and argues that because "a real defense
9                    existed, supported both by forensic evidence as well as witness
                     testimony," prior counsel was ineffective for failing to investigate.
10                   Defendant's argument is without merit.

11                   "'Withdrawal of a . . . plea is left to the sound discretion of the trial
                     court.  A denial of the motion will not be disturbed on appeal absent
12                   a showing the court has abused its discretion.'"  (People v. Huricks
                     (1995) 32 Cal.App.4th 1201, 1208; see Pen. Code, § 1018.)  "'The
13                   power to judge credibility of witnesses, resolve conflicts in
                     testimony, [and] weigh evidence . . . is vested in the trial court.  On
14                   appeal all presumptions favor proper exercise of that power.'"
                     (People v. James (1977) 19 Cal.3d 99, 107.)  Here, the trial court
15                   made an explicit credibility determination in favor of prior
                     counsel's declarations; therefore, we accept as true the statements
16                   made by prior counsel in his declarations and disregard conflicting
                     statements of defendant.
17
                     With the above principles in mind, we examine whether prior
18                   counsel was ineffective to determine whether the court abused its
                     discretion.  "''[I]n order to demonstrate ineffective assistance of
19                   counsel, a defendant must first show counsel's performance was
                     'deficient' because his 'representation fell below an objective
20                   standard of reasonableness . . . under prevailing professional
                     norms.' [Citations.]  Second, he must also show prejudice flowing
21                   from counsel's performance or lack thereof.'''"  (People v. Mitchell
                     (2008) 164 Cal.App.4th 442, 466–467.)
22
                     Prior counsel declared that defendant never told him she thought
23                   someone else was driving, that the phone in the car was not hers, or
                     that she wanted a secondary investigation.  To the contrary,
24                   defendant told him on more than one occasion that she was the
                     driver.  Based on these facts, prior counsel would have had no
25                   reason to think that an additional investigation was necessary.
                     Therefore, his representation of defendant did not fall below an
26                   objective standard of reasonableness.  Based on these facts, which
                     the trial court credited, it was well within its discretion to deny
27                   defendant's motion to withdraw her plea.

28   Nicholson, 2013 WL 3209465, at *2.

                                         12

1
2

**b. Legal Standards Governing Ineffective Assistance of Counsel Claims**

3   The clearly established federal law governing ineffective assistance of counsel claims is

4   that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

5   succeed on a Strickland claim, a defendant must show both that (1) his or her counsel's

6   performance was deficient and that (2) the "deficient performance prejudiced the defense."  Id. at

7   687.  Counsel is constitutionally deficient if his or her representation "fell below an objective

8   standard of reasonableness" such that it was outside "the range of competence demanded of

9   attorneys in criminal cases."  Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors

10  must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"

11  Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 687).

12  A reviewing court is required to make every effort "to eliminate the distorting effects of

13  hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

14  conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 669.  See also Richter,

15  562 U.S. at 107 (same).  Reviewing courts must therefore "indulge a strong presumption that

16  counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland,

17  466 U.S. at 689.  There is in addition a strong presumption that counsel "exercised acceptable

18  professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th

19  Cir. 1990) (citing Strickland, 466 U.S. at 689).  This presumption of reasonableness means that

20  the reviewing court must "give the attorneys the benefit of the doubt," and must also

21  "affirmatively entertain the range of possible reasons [defense] counsel may have had for

22  proceeding as they did."  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1407 (2011)

23  (internal quotation marks and alterations omitted).

24  The Strickland test for demonstrating ineffective assistance of counsel is "applicable to

25  ineffective-assistance claims arising out of the plea process."  Hill v. Lockhart, 474 U.S. 52, 57

26  (1985).  In this context, prejudice "focuses on whether counsel's constitutionally ineffective

27  performance affected the outcome of the plea process."  Hedlund v. Ryan, 750 F.3d 793, 809 (9th

28  Cir. 2014) (quoting Hill, 474 U.S. at 59).  "[I]n order to satisfy the 'prejudice' requirement, the

13

1    defendant must show that there is a reasonable probability that, but for counsel's errors, he [or

2    she] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at

3    809 (footnote omitted). See also Lafler v. Cooper, ___U.S.___, 132 S. Ct. 1376, 1384-85 (2012).

4    With regard to claims of ineffective assistance during the plea process involving defense

5    counsel's alleged failure to investigate, the Supreme Court has explained:

6
>    In many guilty plea cases, the "prejudice" inquiry will closely
7    resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For
8    example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the
9    determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the
10   likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment, in
11   turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.  Similarly, where
12   the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of
13   the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

14   Hill, 474 U.S. at 59.  See also Smith v. Mahoney, 611 F.3d 978, 989 (9th Cir. 2010)

15       "The standards created by Strickland and § 2254(d) are both "highly deferential," and

16   when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations

17   omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

18   counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

19   court and the defense attorney the benefit of the doubt." Woods v. Daniel, ___U.S.___, 135 S.

20   Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. ___, ___, 134 S. Ct. 10, 13 (2013)).  As

21   the Ninth Circuit has recently acknowledged:

22
>    "The question," therefore, "is whether there is any reasonable
23   argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).  Even where this
24   court believes the state court decision was "wrong," that result must be upheld if "fairminded jurists could disagree on [its] correctness."
25   Id. at 786.

26   Camp v. Nevins, ___F.3d___, ___, 2015 WL 1347350, at * 4 (9th Cir. Mar. 26, 2015).

27   /////

28   /////

### c. Analysis

As noted above, whether the state trial court abused its discretion under state law in denying petitioner's motion withdraw her no contest plea is not cognizable in this federal habeas corpus proceeding. Wilson, 562 U.S. at 5 ("But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle, 502 U.S. at 67. Rather, petitioner must demonstrate that the trial court's denial of her motion to withdraw her no contest plea violated her federal constitutional rights in order to be entitled to federal habeas relief. 28 U.S.C. § 2254(a). The essence of petitioner's arguments before this court is that the state trial court should have allowed her to withdraw her plea because it was entered due to the ineffective assistance provided by her counsel which in turn prevented her from presenting a meritorious defense to the charges brought against her.

As explained above, in order to prevail on this argument, petitioner must establish both that: (1) her trial counsel rendered constitutionally ineffective assistance in failing to investigate the possibility that she was not the driver of the vehicle that crashed; and (2) she was actually prejudiced by her counsel's deficient performance. Strickland, 466 U.S. at 687. A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if a petitioner cannot sufficiently prove one of them. Strickland, 466 U.S. at 697; see also Lopez v. Ryan, 630 F.3d 1198, 1206 (9th Cir. 2011) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . ., that course should be followed."); Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

The undersigned concludes that petitioner has failed to make a showing of prejudice that is required in order to support the granting of federal habeas relief on an ineffective assistance of counsel claim.[4] In this regard, there is simply no evidence before this court that petitioner's

---

[4] Given petitioner's failure to demonstrate prejudice, the deficient performance prong need not be addressed in detail. However, the undersigned will briefly explain why that could be a closer question. Faced with a direct conflict in the evidence presented by the dueling declarations of petitioner and her prior counsel, the state trial court nonetheless denied petitioner's motion to withdraw her plea without taking live testimony. Instead, the court rejected petitioner's declarations as incredible and found those of her former counsel credible in part because, as an officer of the court, counsel had a "duty of candor and honesty" with the court. (ECF No. at 54-

1  former counsel would have advised her to reject the prosecution's plea offer and proceed to trial

2  even if he had conducted a defense investigation and/or obtained the information set forth in the

3  declarations filed in support of petitioner's motion to withdraw her no contest plea.  Those

4

5  58.)  The state appellate court deferred to what it described as the trial court's determination of
   the credibility of witnesses even though no testimony was taken.  The Supreme Court has stated
6  that "[w]hen the issue is one of credibility, resolution on the basis of affidavits can rarely be
   conclusive."  Blackledge v. Allison, 431 U.S. 63, 82 n. 25 (1977).  See also Huff v. United States,
7  734 F.3d 600, 607-08 (6th Cir. 2013); Raysor v. United States, 647 F.3d 491, 494–97 (2d Cir.
   2011).  It has been recognized that "[i]n rare instances, credibility may be determined without an
8  evidentiary hearing where it is possible to 'conclusively' decide the credibility question based on
   'documentary testimony and evidence in the record."  Earp v. Ornoski, 431 F.3d 1158, 1169-70
9  (9th Cir. 2005).  See also Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007) (in the habeas
   context a court may make a credibility determination based solely on conflicting affidavits where
10 the petitioner's affidavit is "cryptic" and the respondent's affidavit is factually detailed);United
   States v. McAtee, 481 F.3d 1099, 1103 (8th Cir. 2007) (inclusion of specific details in an affidavit
11 may serve as an indicator of the affiant's credibility); United States v. Perez, 393 F.3d 457, 464
   (4th Cir. 2004) (a court may properly discount an affidavit's "unsupported, conclusory
12 statements").  It appears questionable whether this was one of the rare instances in which a
   credibility determination was appropriately made without the taking of live testimony.  There was
13 nothing inherently incredible about petitioner's two declarations on the relevant question –
   whether her prior attorney had been asked to conduct a defense investigation and whether he said
14 he was doing so.  In fact, many of the representations made in petitioner's declarations were
   supported by attached documents.  Those two declarations were not cryptic, lacking in detail,
15 unsupported or conclusory.  The trial court did: note some arguable inconsistencies between
   petitioner's two declarations; point to evidence which may have refuted her contentions; and
16 question the timing of her motion to withdraw her plea.  However, those matters would appear to
   pale in comparison to the questions raised by her prior counsel's declarations.  Counsel initially
17 stated the evidence against his client was overwhelming, there was nothing for the defense to
   investigate and that petitioner had not contested the charges but merely thought the plea offer was
18 too harsh.  When confronted by petitioner with his text message to her in which he told her that
   his investigator would be completing the investigation the following week but that she should not
19 expect anything helpful to be developed, counsel responded only by contending that the text was
   somehow being presented "grossly out of context and in an incredibly dishonest way."  (CT at
20 106.)  Counsel's lengthy explanation for his text boiled down to this – he claimed that in referring
   to the due date for his investigator's investigation all he really meant was that he and his
21 investigator would review the police reports again.  (CT 106-09.)  That explanation is difficult to
   reconcile with the words of his text.  The weakness of that explanation would seem to have called
22 for the taking of testimony so that its credibility could be tested.  This in turn could present a
   question as to whether the state court's fact-finding process was so fundamentally flawed that it
23 resulted in an unreasonable determination of the facts to which no deference would be owed by
   the federal habeas court.  Hurles v. Ryan, 752 F.3d 768, 790 (9th Cir. 2014); see also Camp v.
24 Neven, ___F.3d___, ___, 2105 WL 1347350, at *3 (9th Cir. Mar. 26, 2015).  However, because
   petitioner has failed to demonstrate prejudice, these potentially difficult issues need not be
25 resolved.

26

27

28

1   declarations consisted largely of somewhat vague hearsay (and sometimes double hearsay)

2   statements and surmise.  Moreover, although much time has passed since she first moved to

3   withdraw her plea in state court, petitioner has failed to further amplify those declarations by

4   gathering and presenting specific admissible evidence demonstrating that she was not the driver

5   of the vehicle at the time of the crash.  In sum, there is no substantial evidence before this federal

6   habeas court that defense counsel's discovery of the information contained in the declarations

7   upon which petitioner relies, or any other defense investigation, "would have led counsel to

8   change his recommendation as to the plea," or would have supported an affirmative defense that

9   "likely would have succeeded at trial."  Hill, 474 U.S. at 59.  See also Weaver v. Palmateer, 455

10   F.3d 958, 9712 (9th Cir. 2004) ("Here the record provides no indication that further testing of the

11   fingerprints would have yielded a different result, thereby inducing Chaivoe to alter his advice or

12   shaking Weaver's decision to plead guilty); Lambert v. Blodgett, 393 F.3d 943, 982 (9th Cir.

13   2004) ("Courts have generally rejected claims of ineffective assistance premised on a failure to

14   investigate where the record demonstrates that the defendant would have pled guilty despite the

15   additional evidence and where the additional evidence was unlikely to change the outcome at

16   trial.")

17        Petitioner's contention is that investigation by her former counsel may have resulted in the

18   discovery of concrete, admissible evidence that would have supported a potential defense that

19   someone else was driving her car when the accident occurred.  This argument, unsupported by

20   evidence of what a defense investigation would have actually yielded, is insufficient to establish

21   prejudice.  See Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective

22   assistance claim rejected where he presented no evidence concerning what counsel would have

23   found had he investigated further, or what more exhaustive defense preparation would have

24   accomplished); see also Bible v. Ryan, 571 F.3d 860, 871 (9th Cir. 2009) (merely pointing to the

25   potential for development of evidence is insufficient to establish prejudice justifying the granting

26   of habeas relief).

27        Petitioner has merely pointed to circumstances suggesting a reason as to why defense

28   investigation into who was driving was appropriate.  That is a far cry from establishing that if that

investigation had been conducted it would have uncovered admissible evidence that would have in turn caused petitioner not to plead guilty and to instead proceed to trial and that if she's done so, she likely would have prevailed.  All of the evidence and circumstances on the other side of the scale, much of it relied upon by the trial court in concluding that no defense investigation was necessary, was still present and would have been taken into account by petitioner and her counsel. Specifically, a bouncer had walked petitioner outside the bowling alley and went back in to call her a cab just before the crash occurred, it was petitioner's car that crashed into the patio area, police arrived at the scene to find an intoxicated petitioner standing next to the driver's side door of that vehicle, she in fact admitted to those officers that she had been drinking and was driving ("I backed out of the parking lot and then it was like I was in a movie") and one of the victims of the crash identified petitioner as the driver of the car who had hit her.  Faced with that substantial and damaging evidence and the likelihood that a rejection of the plea offer would increase her prison sentence exposure, the mere possibility of a theory of defense is insufficient to establish that petitioner would have rejected the offer and proceeded to trial had a defense investigation been conducted.  As the Supreme Court has recognized:

> Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations described above:  The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence.
>
> * * *
>
> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial or, as in this case, even before the prosecution decided on the charges. The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty.  There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place. The substantial burden to show

1

2

> ineffective assistance of counsel, the burden the claimant must meet to avoid the plea, has not been met in this case.

3  Premo v. Moore, 562 U.S. 115, 129, 132 (2011).  See also Smith, 611 F.3d at 991 ("We have

4  previously held that prejudice does not generally exist when a defendant chooses to plead

5  guilty.") (citing Lambert, 399 F.3d at 980).

6      For all of these reasons, the undersigned concludes that petitioner has failed to show that

7  her trial counsel's failure to conduct an investigation into whether she was driving at the time of

8  the crash affected the outcome of the plea process.  Accordingly, petitioner is not entitled to

9  federal habeas relief with respect to her claim that the trial court violated her constitutional right

10 to effective assistance of counsel in denying her motion to withdraw her no contest plea.

11          **2. Actual Innocence**

12     In her third and final claim for federal habeas relief, petitioner argues that the allegations

13 contained in her motion to set aside her plea of nolo contendere supported "a defense to her

14 charges" and demonstrated that she was in fact innocent.  (ECF No. 1 at 5.)  The undersigned will

15 assume that this claim is distinguishable from petitioner's other claim for relief and liberally

16 construe it as a "freestanding" claim of actual innocence – i.e., that, despite the lack of any

17 constitutional error during her criminal proceedings in state court, her incarceration is

18 unconstitutional due to her actual innocence of the charges upon which she was convicted.

19     The United States Supreme Court has, on several occasions, assumed, without expressly

20 deciding, that a "freestanding" claim of actual innocence is cognizable on federal habeas review.

21 See House v. Bell, 547 U.S. 518, 554–55 (2006); Herrera v. Collins, 506 U.S. 390, 417 (1993).

22 The Ninth Circuit has also assumed that freestanding actual innocence claims are cognizable on

23 collateral attack.  See e.g., United States v. Berry, 624 F.3d 1031, 1038 n. 5 (9th Cir. 2010) ("This

24 circuit recognizes a claim of actual innocence that is cognizable under § 2255."); Carriger v.

25 Stewart, 132 F.3d 463, 476–77 (9th Cir.1997) (en banc).  However, the standard for establishing

26 that one is entitled to relief on such a freestanding actual innocence claim is "'extraordinarily

27 high.'"  Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417).  In order to prevail, a

28 petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that

1    he is probably innocent." Id. See also Cooper v. Brown, 510 F.3d 870, 923 (9th Cir. 2007)

2    ("Under these standards, a petitioner must affirmatively prove that he is probably innocent.");

3    Boyde v. Brown, 404 F.3d 1159, 1168 (9th Cir. 2005) (same).

4           Keeping in mind the demanding showing required for relief on such a claim, the

5    undersigned finds that petitioner has failed to show that she is probably innocent of the crime of

6    which she was convicted.  Petitioner's arguments fail to meet the high standards to prevail on

7    such a claim.  As discussed above, petitioner's assertion that she might not have been the driver

8    of the vehicle clearly does not affirmatively prove that she is probably innocent of the charge to

9    which she entered her no contest plea.  Accordingly, she is not entitled to federal habeas relief on

10   his claim.

11           **C.  Evidentiary Hearing Request**

12          Finally, petitioner requests an evidentiary hearing on the claims set forth in her petition.

13   (ECF No. 1 at 1.)  Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under

14   the following circumstances:

15              (e)(2) If the applicant has failed to develop the factual basis of a
               claim in State court proceedings, the court shall not hold an
16              evidentiary hearing on the claim unless the applicant shows that-

17                (A) the claim relies on-

18                   (i) a new rule of constitutional law, made retroactive to cases on
                  collateral review by the Supreme Court, that was previously
19                unavailable; or

20                   (ii) a factual predicate that could not have been previously
                  discovered through the exercise of due diligence; and
21
                   (B) the facts underlying the claim would be sufficient to establish
22                by clear and convincing evidence that but for constitutional error,
                  no reasonable fact finder would have found the applicant guilty of
23                the underlying offense[.]

24          Under this statutory scheme, a district court presented with a request for an evidentiary

25   hearing must first determine whether a factual basis exists in the record to support a petitioner's

26   claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme,

27   187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir.

28   2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting

1  an evidentiary hearing must also demonstrate that she has presented a "colorable claim for relief."

2  Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d

3  706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

4  that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

5  entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

6  marks and citation omitted).   Finally, the Supreme Court has held that federal habeas review

7  under 28 U.S.C. §  2254(d)(1) "is limited to the record that was before the state court that

8  adjudicated the claim on the merits" and "that evidence introduced in federal court has no bearing

9  on" such review.  Pinholster, 131 S. Ct. at 1398, 1400.  See also Ryan v. Gonzalez, ___U.S.___,

10  133 S. Ct. 696, 705 (2013); Woods v. Sinclair, 764 F.3d 1109, 1121 (9th Cir. 2014).

11         The undersigned concludes that no additional factual supplementation is necessary in this

12  case and that an evidentiary hearing is not appropriate with respect to the claims raised in the

13  instant petition.  Petitioner's speculation that, in light of certain circumstances, it is conceivable

14  that she might not have been the driver of the vehicle involved in the accident is insufficient to

15  warrant an evidentiary hearing.  Petitioner's allegations and the evidence proffered in support

16  thereof do not give rise to a concrete and material factual conflict in the evidence that would

17  require this federal habeas court to hold an evidentiary hearing in order to resolve.  Therefore,

18  petitioner's request for an evidentiary hearing will be denied.

19  **III.  Conclusion**

20         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

21  habeas corpus and her request for an evidentiary hearing be denied.

22         These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24  after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

27  shall be served and filed within fourteen days after service of the objections.  Failure to file

28  objections within the specified time may waive the right to appeal the District Court's order.

1   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

2   1991).  In his objections petitioner may address whether a certificate of appealability should issue

3   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

4   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

5   enters a final order adverse to the applicant).

6   Dated:  April 13, 2015

7

8   _____

    DALE A. DROZD

9   UNITED STATES MAGISTRATE JUDGE

10  DAD:8:
    Nicholson2407b.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28